**STATE of Tennessee, Appellee,**

v.

**Leonard Edward SMITH, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 29, 1995.

Larry S. Weddington, Bristol, J. Robert Boatright, Kingsport, for appellant.

Charles W. Burson, Attorney General and Reporter, Nashville, Christina S. Shevalier, Assistant Attorney General, Nashville, H. Greeley Wells, Asst. District Attorney General, Blountville, for appellee.

## OPINION

WADE, Judge.

The defendant, Leonard Edward Smith, has filed an application for an extraordinary appeal pursuant to Tenn.R.App.P. 10 requesting review of orders entered by the Criminal Court of Johnson County (1) denying his "Motion to Dismiss for Lack of Venue Jurisdiction," (2) denying his counsel's "Motion to Withdraw as Counsel of Record," and (3) denying his "Motion for Recusal of Trial Judge." The defendant contends that he is entitled to an extraordinary appeal pursuant to Tenn.R.App.P. 10 because "the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review."

The state has filed a response, arguing that the trial court's denial of the motion to dismiss for lack of venue and the motion for recusal could be fully litigated on direct appeal after the entry of judgment. Tenn. R.App.P. 3. As to the motion to withdraw as counsel, the state seeks to distinguish the holding in *State v. Jones,* 726 S.W.2d 515, 520–21 (Tenn.1987):

A lawyer aggrieved by the necessity of accepting an appointment to represent an indigent criminal defendant may accept the appointment and, at the same time that he or she diligently pursues the defense of the client, may seek a Rule 10 review of the propriety of the trial judge's decision in making the appointment. The basis for the Rule 10 application is that the lawyer, denied the right of review of whether it is appropriate for him to represent the defendant until after the trial and in the normal appellate procedure, loses a right he can never regain. *See State v. Willoughby,* 594 S.W.2d 388 (Tenn.1980). On the other hand, if the lawyer refuses the appointment and is adjudged in contempt, that

judgment is final and appellate review is limited to a Rule 3 appeal, as in the instant case.

In either event, the lawyer who questions the propriety of the appointment has the burden of showing that [a valid basis for withdrawal] exists. Of course, for appellate review of that issue an adequate record must be made in the trial court. It is incumbent upon the trial judge to give lawyers a reasonable opportunity to make a record on that issue . . . .

The state has not contested the statement of facts offered by the defendant in this application to appeal. On March 1, 1995, this court granted a limited extraordinary appeal. Each side has been allowed the opportunity to supplement the record, cite additional authority, and present further argument.

A brief history is in order. The victims, John Pierce and Novella Webb were killed in Sullivan County. The defendant, who asked for and received a change of venue to Hamblen County, was convicted on two counts of felony murder. He received a life sentence for the murder of Pierce and the death penalty for the murder of Webb. On the first direct appeal, the Tennessee Supreme Court affirmed the conviction and the life sentence for the murder of Pierce but reversed the conviction for the murder of Webb for two reasons: an improper joinder of offenses and prosecutorial misconduct during final argument. *See State v. Smith,* 755 S.W.2d 757 (Tenn.1988). Upon retrial, the defendant was again convicted for the felony murder of Novella Webb and again sentenced to death. In *State v. Smith,* 857 S.W.2d 1 (Tenn.1993), the opinion released on the second direct appeal, our supreme court affirmed the conviction but vacated the death penalty on two grounds:

(1) the jury was improperly allowed to consider the life sentence imposed for the Pierce murder in deliberating whether the defendant should receive the death penalty; and

(2) the felony underlying the felony murder was improperly used as an aggravating circumstance. *See State v. Middlebrooks,* 840 S.W.2d 317 (Tenn.1992).

While a majority of the court rejected the defendant's claim that venue should have been changed from Hamblen County, the place of both the first and second trials, former Justice Daughtrey wrote separately in her concurring and dissenting opinion that "the need for another change of venue ought to be carefully reassessed." *Id.* at 26.

In response to the expression of concern by Justice Daughtrey, the trial court ordered a second change of venue, this time from Hamblen County to Johnson County. The defendant filed a motion to dismiss for lack of venue in Johnson County and also sought the recusal of the trial judge. Defense counsel asked permission to withdraw. The trial judge denied relief on all requests.

Our grant of the extraordinary appeal was based upon the allegation that the trial court, at least on the question of venue, had "so far departed from the accepted and usual course . . . as to require immediate review." Tenn. R.App.P. 10(a). Absent an authoritative ruling, the defendant asserted that he would have "lost a right or interest that may never be recaptured." *State v. Willoughby,* 594 S.W.2d 388, 392 (Tenn.1980). Certainly, potential error could be avoided by the grant of this extraordinary relief, error which might ultimately cause even further delay in this protracted proceeding.

## I

As his first claim on this Rule 10 appeal, the defendant contends that because he did not consent to the venue change, as required by Tenn.R.Crim.P. 21(a), the Criminal Court of Johnson County had no jurisdiction to proceed. The applicable rule provides that "[i]n all criminal prosecutions the venue may be changed upon motion of the defendant, or upon the court's own motion *with the consent of the defendant,* if it appears to the court that, due to undue excitement against the defendant in the county where the offense was committed or any other cause, a fair trial probably could not be had." (Emphasis added). Venue is jurisdictional in this state. The accused has the right to be tried in the county in which the crime has been committed. Tenn. Const. Art. 1, § 9; Tenn. R.Crim.P. 18; *State v. Morris Ray,* No.

01C01–9201–CC–00025, 1993 WL 65841 (Tenn.Crim.App., at Nashville, March 11, 1993); *perm. to appeal denied,* (Tenn.1993).

The pertinent facts on the venue issue are apparently uncontested. Due to considerable pretrial publicity in the Tri–Cities area, the defendant asked for a venue change from Sullivan County. The trial court initially denied the motion but, after an unsuccessful attempt to impanel a jury, granted the request, ruling that "Hamblen County would be the closest place that [the trial] should go." The defendant consented to the change.

The defendant was convicted by a Hamblen County jury and sentenced to death for the Webb murder. Our supreme court reversed the conviction and remanded for a new trial. Before the second trial, the defendant unsuccessfully sought to change venue from Hamblen County. When convicted a second time and again sentenced to death, the defendant appealed, contending, among other things, that the trial court had erred by failing to change venue for the second trial. The supreme court affirmed the conviction but reversed the death penalty and remanded for a third sentencing hearing.

Now, the defendant claims that the trial court erred by granting a change of venue to Johnson County, a county adjacent to Sullivan County and more closely located than Hamblen County. The venue right, whether by Rule 21 or by constitutional mandate, entitles the defendant to a trial in the county in which the crime occurred. Here, of course, that is Sullivan County. Although I have departed from the majority opinion on this issue, I will nonetheless attempt to accurately state their view.

Pertinent portions of the procedural rule are as follows:

**Rule 21. Change of Venue.**—(a) In all criminal prosecutions the venue may be changed upon motion of the defendant, or upon the court's own motion with the consent of the defendant, if it appears to the court that, due to undue excitement against the defendant in the county where the offense was committed or any other cause, a fair trial probably could not be had.

\* \* \* \* \* \*

(c) In a multi-judicial circuit a change of venue shall be to the nearest county in the judicial circuit in which the prosecution is pending where the same cause for change of venue does not exist. If the same cause for change of venue exists in all other counties in the judicial circuit, the venue shall be changed to the nearest county where the same cause for change of venue does not exist.

(d) *In a single-county judicial circuit the venue shall be changed to the nearest county where the same cause for change of venue does not exist.*

(e) If in the opinion of the court there are two (2) or more adjoining counties, or counties about equidistant, to which the case might be removed under the provisions of this rule, the court shall determine to what county the cause shall be removed.

(f) If a change of venue is ordered, the clerk shall make out a full and complete transcript of the record and proceedings in the cause, and transmit the same, together with the indictment and all other papers on file, to the clerk of the receiving court, which transcript shall be entered on the minutes of the receiving court.

\* \* \* \* \* \*

(i) The receiving court shall take cognizance of the cause, and proceed therein to trial, judgment, and execution, in *all respects as if the indictment had been found in that court.*

\* \* \* \* \* \*

(k) All fines and forfeitures in such cases go to the county in which the indictment was found, and judgment must be rendered accordingly. The fees of all jurors and witnesses, on being properly certified by the clerk of the receiving court, are a charge on the county in which the indictment was found, in like manner as if the trial had not been removed.

(Emphasis added).

■ Clearly, the defendant waived venue in Sullivan County, a single county judicial

district in January of 1985. Moreover, the record of the original proceedings established that Hamblen County was the nearest venue untainted by the pretrial publicity; according to the trial judge, that was "the closest place" a fair trial could be held. The majority interprets that ruling as compliant with subsection (d) of Rule 21.

Subsection (i) of the rule authorized the "receiving court," that in Hamblen, to then proceed in all respects as if "the indictment had been found in that court." Thus far, that has occurred. And, despite former Justice Daughtrey's expression of concern, the majority opinion of the supreme court upheld the trial court's refusal to grant another venue change at the beginning of the second trial.

■ Rule 21 confers procedural rights upon the defendant. By the terms of the rule, there may be no change of venue unless the defendant either asks for it or consents to it. Because Hamblen County is, under Rule 21(i), now the place "of the indictment," the defendant is entitled to protections similar to those he had in Sullivan County before the change. In consequence, the defendant is entitled to a trial in Hamblen County.

■ Moreover, regardless of whether the defendant or the trial court, with the defendant's consent, moves for a change of venue, the threshold determination to be made is whether, in fact, cause exists to conclude that a fair trial probably cannot be had. Rule 21 contemplates that such a showing be made of record. *See, e.g.,* Rule 21(a) and (b).

■ In this respect, as previously noted, the last determination made by the majority of our supreme court was that the previous refusal to grant a change of venue from Hamblen County was appropriate. However, some two years after the supreme court remanded the case for retrial of the penalty phase and without any further evidence being presented to show any need for a change of venue, the trial court in the instant case chose upon its own motion to move the trial of the case to Johnson County. This, the majority believes, it could not do given the record before us.

In fact, even if the views expressed in my separate opinion were embraced by the majority,[1] the majority would still conclude that the record fails to contain substantial or material evidence to support the trial court's conclusions about either the need to transfer the case from Hamblen County or Johnson County being an appropriate receiving forum. Indeed, given the fact that the original trial court previously found Johnson County to be an inappropriate venue for the trial of this case, the majority of this court would conclude that such a transfer should only occur after a determination that the previously existing taint has dissipated.

■ Finally, the majority believes that the fact that the defendant sought a change of venue before his second trial, involving both the guilt and penalty phases, does not preclude him, at this point, from seeking to have the retrial of the penalty phase occur in Hamblen County. There could be circumstances that indicate that the defendant's concern about an unfair trial related more to the guilt phase than the penalty phase. In any event, the majority concludes that the record before the court does not justify the transfer ordered by the trial court.

## II

Next, the defendant asserts that the trial court should have granted defense counsel's motion to withdraw. The affidavits in support of the motion provide that the two attorneys who represented the defendant are court-appointed counsel and have been since 1984. They submit that the demands of this case have presented an economic hardship and will continue to do so in the future. Defense counsel asserts that their practices are now primarily civil and that they have handled only one or two other criminal cases in the last five years. Counsel for the defendant rely upon the holding in *Jones* for the proposition that an extraordinary appeal may be appropriate for appellate review of both

1. The majority agrees that the constitutional venue protection afforded the defendant relative to Sullivan County has no relevance to the concern of whether Hamblen or Johnson County is presently an appropriate forum.

appointment of counsel and withdrawal of counsel.

■ While *Jones*, as the state points out, dealt specifically with the appointment of counsel rather than the withdrawal of counsel, that minor difference, in our view, does not qualify as a distinction. We will attempt to explain. In *Jones*, defense counsel claimed a conflict of interest as the basis for his request to withdraw. The trial court denied relief. And, while our supreme court found no disqualifying grounds, it recognized the principle that an extraordinary appeal was available to appointed counsel and, upon adequate grounds, withdrawal was an appropriate pretrial remedy. That principle, we think, would apply whether the issue was one of appointment or one of withdrawal. Reasons for disqualification might exist in either event.

■ Now we turn to the merits of the claim, again relying upon the uncontested information available from this limited record. Initially, it is obvious that each of the two attorneys for the defendant has performed capably thus far. Throughout two trials and two direct appeals they have, despite some rather gruesome circumstances, achieved some measure of success for this defendant. By the vigorous representation of their client, they have done honor not only to themselves but to their profession as well. Through sheer perseverance, they have inevitably gained familiarity with both the facts of this case and the pertinent propositions of law. The most recent remand from the supreme court was for sentencing purposes only. The supplemental research necessary for continued, effective representation should be minimal. There have been few legal developments in capital cases since the last sentencing trial. Thus, we must conclude that the trial court did not abuse his discretion by denying the motion to withdraw.

### III

As his last issue, the defendant argues that the trial judge [2] should have granted his motion for recusal. The defendant refers to Article 6, Section 11 of the Tennessee Constitution and Rule 10, Canon 3(C)(1)(a) and (b) of the Rules of the Supreme Court. The rules provide that no judge should preside in the trial of any cause in which he may have been counsel or where his impartiality might reasonably be questioned. The defendant points out that the trial judge was the prosecuting attorney in an earlier case in which the defendant was convicted of robbery and that the state intends to rely upon that conviction as an aggravating factor in seeking the death penalty in this case.

The record indicates that the trial judge had no recollection of the defendant's prior conviction. At the hearing on the motion, the trial court ruled that the state would not be allowed to introduce any underlying facts of the crime.

■ A motion of recusal, based upon the alleged bias or prejudice of the trial judge, rests within the discretion of the trial court. *Caruthers v. State*, 814 S.W.2d 64, 67 (Tenn.Crim.App.1991). When a motion to recuse is made, a judge should grant the motion whenever his or her "impartiality might reasonably be questioned." Code of Judicial Conduct, Canon 3(C); Tenn.Sup. Ct.R. 10; *State v. Jimmy D. Dillingham*, No. 03C01–9110–CR–00319, 1993 WL 22155 (Tenn.Crim.App., at Knoxville, February 3, 1993), *perm. to appeal denied*, (Tenn.1993). This court will not interfere with the trial court's discretion unless clear abuse appears on the face of the record. *Caruthers*, 814 S.W.2d at 67.

Rule 10, Canon 3(C)(1)(a) and (b) of the Rules of the Supreme Court provides as follows:

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

(b) He served as lawyer in the matter in controversy, or a lawyer with whom he

---

2. Judge Edgar P. Calhoun, now retired, presided over each of the first two trials. Judge Brown has undertaken responsibility for this proceeding.

previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it[.]

Tennessee courts have required disqualification in a number of circumstances. In *State v. Cash*, 867 S.W.2d 741, 748–49 (Tenn. Crim.App.1993), the trial judge (1) engaged in an out-of-court discussion with the assistant district attorney general about the specific factual issue remanded for resolution; (2) made a fact-finding trip to the office of the supreme court in Knoxville; and (3) further interrogated the defendant about possible, prior convictions during the sentencing hearing. On appeal, this court determined that the trial judge should have recused himself from further proceedings. In *Leighton v. Henderson*, 220 Tenn. 91, 93, 414 S.W.2d 419, 420 (Tenn.1967), our supreme court reversed and remanded for a new trial where the trial judge stated, among other things, "I don't care what proof is in the record, if the Governor doesn't pardon this man, I am going to grant the petition...." And, in *Alley v. State*, 882 S.W.2d 810 (Tenn.Crim.App. 1994), the trial judge was disqualified after indicating personal bias against the defendant.

This court ordered recusal when the trial judge made several inappropriate remarks and, after being asked to rule on a motion for a stay of execution, said, "I'll take it under advisement till May the 3rd," the day after the scheduled date of electrocution. *Id.* at 818.

■ Initially, this record does not indicate bias. Secondly, the record does not establish that the trial judge acted as a lawyer in any matter "in controversy"; certainly the evidence is insufficient to establish an abuse of discretion. The application for appeal contains no specific allegations of impartiality other than the fact that the trial judge was a prosecuting attorney in a trial which led to one of the defendant's prior convictions. That the defendant was previously convicted of *robbery* is not in contest here.

In *State v. Warner*, 649 S.W.2d 580 (Tenn. 1983), the trial judge was the district attorney when the defendant was convicted on two of the underlying offenses charged in a habitual criminal indictment. Our supreme court held that there was no disqualification required under the constitutional provision precluding a judge from presiding "on the trial of any cause ... in which he may have been of counsel...." Art. 6, § 11, Tenn. Const. The court limited the disqualifying provision to "the cause on trial ... and not ... prior concluded trials...." 649 S.W.2d at 581. That rationale applies here.

Finally, this issue may be more fully litigated in a direct appeal. If the record is adequately developed so as to establish that the nature of the trial judge's participation in the earlier prosecution deprived the defendant of a fair and impartial arbiter in this case, relief in the way of a new sentencing hearing may be available. This opinion does not foreclose that possibility.

In summary, the majority reverses the trial court's change of venue to Johnson County. *See* Tenn.R.App.P. 2.[3] While an extraordinary appeal is available on the motion to withdraw as counsel, all agree that relief is not warranted; thus we affirm. We unanimously refuse to grant extraordinary relief on the issue of recusal; the issue may be raised in a direct appeal. The cause is remanded.

TIPTON and BARKER, JJ., concur.

WADE, Judge, concurring and dissenting.

While I fully concur with the majority on Issues II and III, I would affirm the trial court's decision to move the trial to Johnson County—at least upon this record. I therefore dissent to the ruling in Issue I. Here, the defendant claims that the trial court erred by granting the very relief he sought before his second trial. He should not be able to challenge that ruling—at least at this point.

---

**3.** "SUSPENSION OF RULES.—For good cause, including the interest of expediting decision upon any matter, the ... Court of Criminal Appeals may suspend the requirements or provisions of any of these rules in a particular case ... on its [own] motion and may order proceedings in accordance with its discretion...."

I view the death penalty phase of the trial as an extension of the guilt phase. It is entirely dependent upon a conviction of the crime charged. In my view, the defendant has waived any Rule 21 or Art. I, § 9, entitlements by his request for another change from Hamblen County. If, however, it can be shown that there is "undue excitement against the defendant in the [new] county" which might prevent a fair trial, the defendant may complain about the change to Johnson County. Tenn.R.Crim.P. 21.

In *State v. Nichols,* 877 S.W.2d 722, 728 (Tenn.1994), the supreme court made the following observations about the nature of venue:

> The constitutional concern with the locality of trial has its origins in colonial history. When the British Parliament in 1769 attempted to try American colonists for treason in England, the Virginia House of Burgesses responded that such a plan would deprive colonists of "the inestimable Privilege of being tried by a Jury from the Vicinage, as well as the Liberty of summoning and producing Witnesses in such Trial." The Declaration of Independence denounced the English monarchy "[f]or transporting us beyond Seas to be tried for pretended offenses." The first Continental Congress lauded "the great and inestimable privilege of being tried by their peers of the vicinage...." There can be little doubt that early Americans valued highly the right to be tried by local jurors in the place where the crime occurred.

The court ruled, however, that a "change of venue motion constitutes a waiver of Article I, § 9, rights" as provided by the Tennessee Constitution. *Id.* And, when there is a waiver, there is no error by the change ordered by the trial court "unless the defendant is prejudiced, the administration of justice harmed, or the trial court abuses its discretion." The record here does not now demonstrate any such danger by the change from Hamblen County to Johnson County. Any complaints about Johnson County are either too old or too new. Too old because

the trial court's initial change of venue to Hamblen County, which passed over Johnson County, was January 8, 1985; now, some ten years later, the likelihood of a fair trial there may be greater than in Hamblen County. Too new because the defendant has prematurely attacked the order of change, that is, he has not yet established "prejudice," harm to the "administration of justice," or an "abuse of discretion."

I will attempt to summarize. The defendant's historical entitlement was to be tried by a jury of his peers; that is, to have a jury selected from Sullivan County, the county in which the crime occurred. *See Chadwick v. State,* 201 Tenn. 57, 60, 296 S.W.2d 857, 859 (1956). That protection, afforded by both the constitution and a rule of procedure which tracks the constitutional mandate, was waived by the defendant's consent to the first venue change. Because the defendant sought to change the venue from Hamblen County at the inception of his second trial, the one which resulted in this felony murder conviction, he has also waived any venue entitlement there. Because this penalty phase is an extension of the guilt phase, the defendant cannot challenge the refusal to change the trial site and then later, after relief is granted, veto the new place of trial; instead, the defendant must establish cause for objection to the new county. The majority's interpretation would never allow a change in the location of the trial when the defendant did not ask for or consent to the change, no matter how difficult it might be to find an impartial jury. Thus, I would conclude that the trial court, at least for now, has the discretionary authority to change the trial location to Johnson County. The record does not now demonstrate that was erroneous.