# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs April 17, 2013

## STATE OF TENNESSEE v. DUSTIN MARSHALL GOFORTH

**Direct Appeal from the Criminal Court for Sumner County**
**No. 607-2010     Dee David Gay, Judge**

---

**No. M2012-00791-CCA-R3-CD    Filed October 17, 2013**

---

Defendant, Dustin Marshall Goforth, was serving a suspended eight-year sentence on supervised probation. Violation of probation warrants were filed, and his suspended sentence was revoked after an evidentiary hearing. The trial court ordered the sentence to be served by incarceration in the Department of Correction. In his sole issue on appeal, Defendant asserts that the trial court erred by denying Defendant's motion for the judge to recuse himself in this case prior to the evidentiary hearing. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, Jr. and ROBERT W. WEDEMEYER, JJ., joined.

Lawren B. Lassiter, Gallatin, Tennessee, for the appellant, Dustin Marshall Goforth.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Jason Criddle, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Defendant pled guilty to three charges of burglary of a motor vehicle and two charges of Class E felony theft. He received an effective sentence of eight years, and was ultimately placed on intensive supervised probation. Violation of probation warrants were filed in August and in September of 2011. Counsel was appointed, and a proposed negotiated disposition of the warrants was submitted to the trial court on December 12, 2011. The trial court refused to accept the agreement which involved incarceration for one year with credit for time served, followed by placement back on supervised probation.

The matter came before the trial court again the following day. Defendant's counsel stated that the parties had an agreement, but before he could announce it, Defendant spoke up and stated that he wanted to have a hearing. Accordingly, the trial court set the matter for hearing on January 30, 2012. On that date it was announced that the parties had reached another agreement, this time clarifying that the prior agreement was for 270 days of incarceration followed by probation, and the new agreement required 365 days of incarceration, "day for day" followed by reinstatement of probation. The trial judge expressed his concerns about the proposed negotiated disposition and refused to accept the new proposed settlement. The matter was ultimately set for a hearing on March 2, 2012. Prior to the scheduled hearing, on February 28, 2012, Defendant filed a motion for the trial judge to recuse himself from hearing Defendant's probation revocation proceeding. In support of his motion, Defendant alleged that the trial judge was not "impartial and disinterested" in his case, as evidenced by comments made by the trial court during previous court appearances and by the fact two proposed negotiated settlement agreements were rejected by the trial judge.

A hearing on the recusal motion was held immediately prior to the scheduled probation violation hearing. The attorneys presented arguments, but Defendant did not testify at the motion hearing, and no other proof was offered. Defendant's counsel did not quote or even paraphrase any specific comments by the trial judge in support of the recusal motion. Defense counsel did make reference to Defendant's feeling that he could not receive a fair hearing by the trial judge because when the trial court rejected one of the proposed settlements, the trial judge stated that Defendant "could have a hearing, or he could go ahead and put his sentence into effect." Defense counsel represented to the trial court that Defendant "felt like us having a hearing would be a waste of everybody's time at this point." At the hearing, defense counsel further alluded to his client's belief that the trial court had already determined, prior to the revocation hearing, that Defendant had in fact committed acts which justified revocation of his probation and that Defendant should thus be ordered to serve the entire sentence.

The State's position at the hearing of the recusal motion was that even though the trial court had twice rejected negotiated dispositions of the revocation warrant, the trial judge had said nothing indicating he had already determined the ruling before hearing the facts. Thus, according to the State, no grounds justified recusal. In ruling on the motion for recusal, the trial judge included the following in his remarks:

> THE COURT: Okay. I think the bottom-line here is that I have rejected two possible dispositions on a probation violation matter. The defendant remembers - - it seems to be what I remember. I stated the last time

that he could have a hearing or put his eight-year sentence into effect. I made no statement at that time of what I would do.

* * *

Now, the law, there are two standards, objective standard and the subjective standard. (As Read): The subjective standard is whenever a judge has any doubt as to his or her ability to preside impartially in a criminal case, then he or she must recuse himself or herself.

I have no doubt in my mind whatsoever that I can sit and hear any evidence. I am aware that all these charges could have been dismissed. I was not given any of that information, or there is a possibility that he could have been convicted of one or more. I don't know at this time. But I feel as a judge who has placed this defendant on probation that I had better find out what is going on here, so I will. There's no reason that I cannot hear any evidence objectively, fairly, impartially.

So as far as the subjective standard goes, I see no - - there is no doubt that I can preside impartially in this probation violation hearing.

Secondly, it's a little bit different. It's an objective standard. Whether the judge believes his or her impartiality can reasonably be questioned. And the exact wording is, (As Read): When a person of ordinary prudence in the judge's position knowing all of the facts known to the judge would find a reasonable basis for questioning the judge's impartiality.

Now, I've gone through a long litany here of the background of the case up to this point to where I have not felt comfortable in accepting dispositions based on the fact that there are five arrests, based on the fact that the Defendant was not reporting, based on the fact that he could possibly be on the lam.

Now, there is nothing wrong or improper or unreasonable or biasesness or prejudice, one way or the other, and this Court wanted to know what in the world is going on here. There's a possibility that this defendant has been acquitted, or these charges have been dismissed. And they were not warranted. There's a possibility that - - I don't know, there

might be explanations for some of these things. But based upon the information that I was given and my responsibility as a trial judge in supervising people on probation and administering justice and protecting the public, there is nothing in this whole record to show that my impartiality in this matter with these issues can be reasonably questioned.

So, therefore, for that reason as well, I respectfully deny the Motion to Recuse. I feel that I can be objective by subjective standard and an objective standard. The Motion to Recuse will be denied.

On appeal, Defendant argues that the following comments by the trial judge, made at hearings prior to the day the recusal motion hearing was held, require reversal of the judgment in this case. At the December 12, 2011, court proceedings the following was stated:

| | |
|---|---|
| [DEFENSE COUNSEL]: | Judge, [Defendant] is also an eight-year sentence out of your court. The agreement that I have with General Criddle is that he will do one year with credit from time served and then he'll be released back onto probation. |
| THE COURT: | What kind of trouble did he get into on probation? |
| [DEFENSE COUNSEL]: | Well, Judge, just looking at the warrant I know we had an initial was set forth - - I think he had some additional charges that he picked up in General Sessions Court, Judge. |
| THE COURT: | Was he convicted of those? |
| [DEFENSE COUNSEL]: | Yes, he was, Judge. |
| THE COURT: | Why isn't he doing his eight years? |
| [DEFENSE COUNSEL]: | Judge, I can't distinguish the difference between General Criddle and General James. [sic] I just know that the offer - - |

-4-

| THE COURT: | Okay. Maybe we ought to get General Criddle out here or maybe why don't you talk to him and tell him that I've got a problem with this. If he's been convicted of other crimes while he's on probation he needs to go to the penitentiary. So you might want to talk to General Criddle and we'll put this on hold. |
|---|---|

On January 30, 2012, the following exchange occurred between the trial court, the prosecutor, and defense counsel:

| THE COURT: | [Defense counsel], did you have something? |
|---|---|
| [DEFENSE COUNSEL]: | Judge, General Criddle and I have an announcement subject to your approval on VOP. |
| THE COURT: | Go ahead. We can take it up. |
| [DEFENSE COUNSEL]: | Mr. Goforth. |
| GENERAL CRIDDLE: | Your Honor, the last time we were here I believe we had agreed on doing 270 days, day for day, with credit for time served on the warrant, and Your Honor rejected that. |
| THE COURT: | Okay. |
| GENERAL CRIDDLE: | We're [proposing] 365 days, day for day. |
| THE COURT: | Let me look and see what's going on here. |
| GENERAL CRIDDLE: | For credit for time served. |
| THE COURT: | Thanks for giving me a heads-up there. |
| GENERAL CRIDDLE: | Sure. I was actually not here when that was announced and Your Honor rejected it. So I'm not certain entirely what was said, but I do know that that's what happened. |

-5-

DUSTIN GOFORTH, Having first being duly sworn, was examined and advised as follows: [sic]

THE COURT: Okay. General, I think the problem that I had looking at the original warrant I always get very concerned when somebody is arrested and convicted of crimes while they're on probation.

GENERAL CRIDDLE: Yes, Your Honor.

THE COURT: Contributing to the Delinquency of a Minor, Simple Assault. **There's no real record here of whatever happened to those and the others - -**

GENERAL CRIDDLE: I believe he pled guilty in General Sessions Court to - - was it two misdemeanors?

**THE DEFENDANT: I pled no contest to the - - they dropped the drug paraphernalia. The domestic got dropped to Simple Assault, I pled no contest. They dropped the resisting.**

THE COURT: Okay. You see my concern - -

GENERAL CRIDDLE: If Your Honor would like I can go get the judgments from General Sessions - -

THE COURT: That's all right. They're still convictions. And then we've got another conviction for Resisting Arrest, Possession of Drug Paraphernalia, another Domestic Assault. He failed to report the arrests. Failed to report regular weekly office visits and reported moving from his residence and did not provide the new address.

**I don't see - - I mean, if this pans out, I don't see any reason for not imposing the**

|                    | sentence. **I think that's what was disturbing me. So has surfaced here that would - -** |
|---|---|
| GENERAL CRIDDLE: | Your Honor, that's obviously well within your authority to do. If that's the case and Your Honor feels that that's the only resolution you'll accept then I suppose we just need to - - I'll go get copies of the judgments. We'll submit them, allow defense counsel - - |
| THE COURT: | **We can have a hearing if you want to, but that - - I don't see any need of putting somebody back on supervision with this much trouble.** |
| GENERAL CRIDDLE: | Yes, Your Honor. |
| THE COURT: | **I'll be glad to have a hearing if you want to.** What we'll do is we'll just hold this on second call until you have a chance to talk. |

(Emphasis added)

### Analysis

The motion for recusal was filed prior to the July 1, 2012, effective date of the provisions regarding recusal set forth in new Rule of the Supreme Court of Tennessee 10B. *See id*. Compiler's Notes. At the time of the recusal hearing, the following relevant provision of the Code of Judicial Conduct was in effect:

E.    **Disqualification**.

(1)    A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a)    the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding.

-7-

Rule of the Supreme Court of Tennessee 10, Canon 3(E)(1)(2011).

On appeal, Defendant does not dispute the trial court's inherent authority to reject both the proposed negotiated settlements submitted by the parties. However, Defendant further asserts, and we quote from his brief, that the situation was "more than a mere rejection" of proposed agreed dispositions. Defendant states:

> The facts reveal a very firm expressed opinion of what is going to happen in this particular matter when the matter is on for hearing. The above-referenced comments made by the sitting trial judge rise to the level of more than just a rejection or even neutral court dicta.

Generally a trial judge retains discretion over the issue of his or her recusal, *State v. Smith*, 906 S.W.2d 6, 11 (Tenn. Crim. App. 1995), and unless the evidence in the record shows that the trial judge abused that discretion, an appellate court will not reverse the trial court's decision. *Pannell v. State*, 71 S.W.3d 720, 725 (Tenn. Crim. App. 2001).

In *State v. Boggs*, 932 S.W.2d 467 (Tenn. Crim App. 1996), this court affirmed the trial court's sentence imposed upon the defendant and in doing so rejected the defendant's argument that the trial court should have granted the defendant's motion for the trial judge to recuse himself from the sentencing hearing. In *Boggs*, the defendant pled guilty to vehicular homicide and reserved for the trial court to determine the sentence after a sentencing hearing. During the guilty plea hearing the trial judge made the following comments to the defendant:

> [I]n vehicular homicide cases - in any type of homicide cases, even in the Class C classification - it is unusual for this Court to grant probation in those cases. As a matter of fact, I cannot recall a case I have handled in which I have given probation in that type of case.
>
> So I want to be up front and candid with you about that so that you understand that you are likely facing a term of imprisonment in this case; do you understand that?

*Boggs*, 932 S.W.2d at 471.

The defendant subsequently filed a motion for the trial judge to recuse himself from hearing her sentencing matter based upon these comments. The defendant asserted that the trial judge could not be fair and impartial. At the hearing of the motion to recuse the trial judge stated in part:

. . . I have not decided what is going to be the final disposition of this case. I have not decided what the sentence is going to be. I have not reached [that] point in the decision-making process.

When I discussed with you . . . the likelihood of imprisonment, I wanted you to understand that, because of the nature and extent of this crime and the circumstances involving it, that there was a likelihood that you would serve some time in prison . . . .

I . . . do not feel that I have prejudged this case or made any predetermination of the disposition of this case. I have now the benefit of a pre-sentence investigation that has come in this week. I have the benefit of some correspondence in this case from people on both sides of the issue, and I intend to continue in this case. I decline to recuse myself in this matter . . . .

So I have no blanket policy in these cases. I don't intend to ever have a blanket policy. I intend to approach every case on its own merits and address the issues that are presented by that particular case. . . .

*Id.*, at 472.

In concluding that the defendant in *Boggs* was not entitled to relief, this court stated,

A trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case, or whenever he believes his impartiality can reasonably be questioned, *State v. Cash*, 867 S.W.2d 741, 749 (Tenn. Crim. App. 1993); see also *Lackey v. State*, 578 S.W.2d 101, 104 (Tenn. Crim. App. 1978). Moreover, recusal is warranted when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality. *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). Any comments made by the trial court must be construed in the context of all the facts and circumstances to determine whether a reasonable person would construe those remarks as indicating partiality on the merits of the case. *Id*. at 822. (citations omitted).

In the instant case, the trial judge indicated that he fully understood the need for impartiality and an open mind before entering the sentencing phase of the proceedings. He also explained that his comments at the guilty

plea hearing were made to ensure that the appellant was voluntarily entering a guilty plea with the understanding that incarceration could be a consequence of her plea.

*Id*.

The case *sub judice* is a close case. However, a thorough review of the entire record persuades us that the record does not preponderate against the trial court's decision. When taken in context under the totality of the circumstances, and viewing this in light of the limited options available to the trial court when a violation of probation is proven, we conclude that the trial court properly exercised its authority to reject the proposed settlements. Although we are aware of no requirement that the trial court state its reason(s) for rejecting a proposed settlement in a probation violation case, the trial court chose to do so at some length. The trial court essentially stated that if the allegations that criminal offenses were committed during probation were proven, the trial court would order the entire sentence to be served without placement back on probation. The trial court would have sent the same message by simply refusing, without comment, to accept each of the proposed settlement agreements which involved a return to probation after periods of incarceration. We see little difference between the situation in *Boggs* and the situation in the case *sub judice*. Defendant is not entitled to relief in this appeal.

Accordingly, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE